IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 28, 2018

## WALTER GEORGE GLENN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 295738    Thomas C. Greenholtz, Judge**

_____

### No. E2017-02019-CCA-R3-PC

_____

Petitioner, Walter George Glenn, appeals the denial of his petition for post-conviction relief from his conviction for second degree murder. On appeal, Petitioner argues that he received ineffective assistance of counsel. After thorough review, we determine that Petitioner received effective assistance of counsel and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and CAMILLE R. MCMULLEN, JJ., joined.

Wencke West, Cleveland, Tennessee, for the appellant, Walter George Glenn.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Neal Pinkston, District Attorney General; and AnCharlene Davis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

In December 2009, Petitioner fatally stabbed his seventeen-year-old stepson with a knife. *State v. Walter George Glenn*, No. E2013-01852-CCA-R3-CD, 2014 WL 3056162, at *1 (Tenn. Crim. App. July 7, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014). The Hamilton County Grand Jury indicted Petitioner for first degree premeditated murder. A petit jury found Petitioner guilty of the lesser included offense of second degree murder. *Id.* at *3. The trial court imposed a Range II sentence of thirty-five years

of incarceration. *Id.* This Court affirmed Petitioner's conviction and sentence. *Id.* at *10. On July 16, 2015, Petitioner filed his post-conviction relief petition alleging ineffective assistance of trial and appellate counsel. Two different attorneys withdrew from representing Petitioner on his post-conviction claims. Eventually, post-conviction counsel was appointed and represented Petitioner at his post-conviction hearing.

At the time that Petitioner was indicted for first degree murder, trial counsel was representing Petitioner on a violation of probation charge. Inevitably, trial counsel, "a seasoned attorney," was appointed to also represent Petitioner on this case. When describing his relationship with Petitioner, trial counsel stated, "I wouldn't call it a working relationship."

When trial counsel and Petitioner first appeared in court, trial counsel discussed Petitioner's arraignment and Petitioner's violation of probation with him. During that discussion, Petitioner insisted that he had a suspended three-year sentence rather than a four-year sentence, as reflected in the paperwork. Nevertheless, Petitioner told trial counsel to stipulate to the violation of probation, but trial counsel explained to the Petitioner that it would be ill advised to do so. So, the probation violation hearing was postponed. Again, trial counsel spoke with Petitioner, and Petitioner said that he wanted his probation to be revoked. Trial counsel believed that Petitioner "was under the misapprehension that he would receive more credit time than in fact he was going to receive." Trial counsel was also concerned with the implications of Petitioner's admission to the probation violation in Petitioner's first degree murder case. Petitioner maintained that he did not take trial counsel's advice regarding pleading to the violation of probation because Petitioner had just met him and did not trust him. According to Petitioner, trial counsel's explanation of the problem with pleading to the violation of probation "went in left field." Without regard for trial counsel's concerns, Petitioner stipulated to the violation of probation. Trial counsel described Petitioner as taking an "adamant position with respect to stipulating to the probation violation against [trial] counsel's advice." As a result, Petitioner's probation was revoked, and a four-year sentence of incarceration was imposed.

Later, Petitioner called trial counsel and expressed his wish to withdraw his guilty plea on the probation violation because Petitioner had misunderstood the credit that he would receive. Trial counsel met with Petitioner the day after the phone call and filed a motion to withdraw the plea. The probation violation was set aside by the trial court.

Petitioner believed that his decision to stipulate to the probation violation should have been a red flag indicating to trial counsel that his mental health might be an issue. To the contrary, trial counsel noted, "[There was] nothing in my interaction with [Petitioner,] even at the beginning of the case[,] that lead me to believe he was having

trouble understanding the nature of the charge against him [or] the nature of the proceeding. He seemed to have a rational understanding of both of those things." Trial counsel perceived "reluctancy" and "distrust" on the part of Petitioner when it came to communication, but not an inability to communicate. Because of Petitioner's "resistance," trial counsel claimed Petitioner "was probably one of the more challenging clients I had." Trial counsel did not perceive any indication that Petitioner was unable to assist with his defense.

Trial counsel sent Petitioner a total of twelve letters throughout the course of his representation. Toward the beginning of his representation of Petitioner, trial counsel made two jail visits to see Petitioner and spoke with Petitioner at four or five intervening court dates. However, trial counsel's communication with Petitioner lapsed for a few months until he received a letter from the Petitioner asking for more communication and explanations. Subsequent to receiving Petitioner's letter, trial counsel met with Petitioner at the jail. Over the course of his representation, trial counsel made nine jail visits to speak with Petitioner. In both the letters and private conversations, trial counsel discussed the validity of the first degree murder indictment, jury instructions, plea offers, trial strategy, likelihood of conviction, and sentencing exposure in various scenarios. Additionally, trial counsel disclosed that he represented the mother of the prosecutor for the State in an unrelated civil matter. Trial counsel believed that he did not have a conflict of interest when it came to representing Petitioner.

Trial counsel recalled that his meetings with Petitioner were not "terribly fruitful endeavor[s]" and that Petitioner seemed focused on ineffective assistance of counsel rather than focusing on defending his murder charge. To trial counsel, it appeared that Petitioner was attempting to build a record for post-conviction proceedings. Of trial counsel's meetings with Petitioner, only two were for less than one hour.

Petitioner claimed that he would have cooperated with trial counsel if he had trusted him. However, Petitioner did not feel that trial counsel was acting in Petitioner's best interest. Petitioner testified that he asked trial counsel to file motions for him but trial counsel refused. Petitioner stated that he wanted to be a part of his defense, but trial counsel did not discuss strategies with him. "We had disagreements," said Petitioner. Petitioner disagreed with trial counsel on trial strategy and the witnesses to be called.

Trial counsel communicated to the Petitioner an offer of a seventeen-year sentence at one hundred percent for a guilty plea to second degree murder. Trial counsel perceived that Petitioner made it very clear that he would not accept the offer. According to trial counsel, Petitioner believed that he did not commit second degree murder. Trial counsel informed the State that Petitioner rejected the offer. Trial counsel maintained that if

Petitioner had asked for time to consider the offer, rather than rejecting it outright, trial counsel would have told the State that they need more time to consider the offer.

Petitioner recollected the conversation about the plea offer differently. Petitioner contends that he did not reject the State's plea offer. Petitioner wanted to speak with his family about the offer. Petitioner said, "I didn't directly refuse it. That was [trial counsel's] assumption because we didn't have no communication." Petitioner maintained that he would have taken the seventeen-year plea offer from the State if he had been given time to consider it.

Eventually, Petitioner complained to the Board of Professional Responsibility about trial counsel's representation. Trial counsel responded with a letter to Petitioner and met with Petitioner. In trial counsel's letter to Petitioner, trial counsel sheds some light on the difficulty of representing Petitioner by stating, "You still do not wish to disclose to me or your investigator the events of what occurred on the day in question, which is your right, but continues to make it difficult to come up with a plausible defense to the charges." Trial counsel closed the letter by saying, "I reiterate to you that your unwillingness to communicate meaningfully with myself and the investigator regarding what happened and plausible defenses is undermining your case." Trial counsel expressed his opinion that his representation of Petitioner would have been better if Petitioner had been willing to communicate.

Multiple times, Petitioner asked trial counsel to withdraw. Petitioner recalled, "Throughout the whole period I was constantly asking him to withdraw." Trial counsel testified, "In retrospect[,] maybe I should have." However, trial counsel never filed a motion to withdraw because he did not perceive an "inability to communicate" with Petitioner, but rather a refusal by Petitioner to communicate about certain things. Trial counsel hoped that he and Petitioner would be able to build some trust and a relationship. Because trial counsel did not withdraw, Petitioner wrote a letter to the trial court. Petitioner's reason for asking for the withdrawal was that the communication between he and trial counsel "broke down." After trial, Petitioner filed a pro se motion to have trial counsel withdraw. Trial counsel followed with his own motion to withdraw. The trial court granted the motion. Appellate counsel was appointed to represent Petitioner on his direct appeal.

In its oral ruling on the Petitioner's post-conviction claims, the post-conviction court "[did] not credit most of the testimony, candidly, from [Petitioner]" and credited the testimony of trial counsel. The post-conviction court held that Petitioner had failed to show that trial counsel was aware that a mental evaluation was warranted and the Petitioner had failed to put on any proof of prejudice consisting of an expert testifying that Petitioner suffered from a mental health issue. The post-conviction court found that

trial counsel communicated with Petitioner and concluded trial counsel was not ineffective in that regard. The post-conviction court added that even if the alleged deficiency existed, there would have been no prejudice because Petitioner's withholding of information from trial counsel severed any causal link between the alleged deficiency and any alleged prejudice. The post-conviction court also held that an actual conflict of interest did not exist in this case. According to the post-conviction court, a potential conflict may have existed, but the potential conflict did not result in ineffective assistance of counsel because no actual prejudice was shown. With regard to Petitioner's claim that trial counsel was ineffective for not filing a motion to withdraw, the post-conviction court found that no prejudice could have resulted from trial counsel's failure to file the motion because Petitioner sent a letter to the trial court and ultimately received a hearing on the issue of whether trial counsel should have withdrawn. Accordingly, the post-conviction court denied the petition. This appeal followed.

*Analysis*

Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to adequately communicate with Petitioner, failed to timely disclose that he represented a close family member of the prosecutor at the time, and failed to timely move to withdraw or zealously advocate for Petitioner regarding the motion to withdraw.[1] The State contends that Petitioner has failed to prove that trial counsel was ineffective. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his or her factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and

---

[1] In his brief, Petitioner expressly waived any claims of ineffective assistance of appellate counsel that were raised in his petition. Additional claims of ineffective assistance of trial counsel were contained in the petition for post-conviction relief but were not argued on appeal. Therefore, they are waived. *See* Tenn. R. Ct. Crim. App. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived by this [C]ourt."); *State v. Thomas*, 158 S.W.3d 361, 393 (Tenn. 2005).

an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the

trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* (quoting *Strickland*, 466 U.S. at 691).

## I. Adequacy of Communication

Trial counsel's testimony, which was accredited by the post-conviction court, reveals that trial counsel made nine jail visits to see the Petitioner, sent twelve letters to the Petitioner, and spoke with the Petitioner at various court dates. In all of that communication, trial counsel broached a number of subjects including: the validity of the indictment, jury instructions, plea offers, trial strategy, likelihood of conviction, and sentencing exposure. It is unquestioned that this communication included the seventeen year plea offer extended by the State. Trial counsel's accredited testimony was that Petitioner rejected that offer. We perceive no deficiency in trial counsel's efforts to communicate with Petitioner. Petitioner has failed to carry his burden of establishing by clear and convincing evidence that trial counsel did not communicate with him or that there was reason to distrust trial counsel. In light of our determination that trial counsel was not deficient, we need not conduct further analysis on this issue. *See Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).

## II. Conflict of Interest

Trial counsel represented the mother of the prosecutor in an unrelated civil matter. Petitioner claims that trial counsel "had a responsibility to notify [Petitioner] of this conflict at the outset of the case" and that the "late disclosure [of this alleged conflict] further severed the relationship between" trial counsel and Petitioner. However, Petitioner never establishes, or even argues, that an actual conflict of interest existed.

"Before a petitioner may obtain post-conviction relief on the ground of a conflict of interest, he must establish by a preponderance of the evidence that: (a) an actual conflict of interest existed; and (b) the conflicting interest adversely affected the performance of counsel. *Antoine Cardet Smith v. State*, No. M2017-000600-CCA-R3-PC, 2017 WL 4861955, at *3 (Tenn. Crim. App. Oct. 26, 2017) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)), *no perm. app. filed*. "A mere 'potential conflict of interest' serves as no basis for a claim of ineffective assistance of counsel." *Clifton D. Wallen v. State*, No. E2000-02052-CCA-R3-PC, 2001 WL 839533, at *1 (Tenn. Crim. App. July, 25, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001). Under the Tennessee

Rules of Professional Conduct, a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a).

First, trial counsel's representation of the prosecutor's mother was not directly adverse to his representation of Petitioner. Though little information was disclosed regarding the civil matter, trial counsel testified that it was unrelated to Petitioner's murder trial. Second, Petitioner has shown no substantial risk that trial counsel's representation of Petitioner would be materially limited. Thus, Petitioner has failed to prove the existence of an actual conflict of interest. Accordingly, trial counsel was not deficient in his disclosure of his representation of the prosecutor's mother to Petitioner.

*III. Withdrawal*

It is clear from the record that Petitioner did not want trial counsel to represent him. Trial counsel admitted that Petitioner asked him to withdraw multiple times. Now, Petitioner argues that trial counsel was ineffective for not complying with his request, or at the very least, not supporting Petitioner's request for new counsel to the trial court.

The right to counsel does not include "the right to appointment of counsel of choice, or to special rapport, confidence, or even a meaningful relationship with appointed counsel. The essential aim of the Sixth Amendment is to guarantee an effective advocate, not counsel preferred by the defendant." *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000) (internal citations omitted). Absent an actual conflict of interest or a complete roadblock to effective representation, we are unaware of any duty on attorneys to withdraw from representation simply because a client requests withdrawal or to support a client's request for new counsel. If such a duty existed, criminal defendants manipulating that duty would inundate our court system with motions to withdraw, bringing our justice system to an unproductive halt. Trial court dockets would jam and trial judge's hands would be unduly tied. In hindsight, trial counsel admitted that perhaps he should have withdrawn. However, at the time that he represented Petitioner, he did not perceive an inability to communicate with Petitioner and had hope for building a better relationship with Petitioner. It was reasonable for trial counsel to continue representing Petitioner. We perceive no deficiency on the part of trial counsel.

At any rate, Petitioner also failed to show that he was prejudiced by trial counsel's refusal to withdraw. Petitioner sent a letter to the trial court about trial counsel's representation. The trial court held a hearing on the matter and denied Petitioner's request for new counsel. Had trial counsel filed a motion to withdraw, the trial court

- 8 -

would have held a hearing and conducted the same analysis.  Thus, Petitioner has failed to show that he was prejudiced.

*Conclusion*

For the aforementioned reasons, the judgment of the post-conviction court is affirmed.


_____

TIMOTHY L. EASTER, JUDGE